MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUSTAVO CAMPOS, | ) | |
| | ) | |
| Petitioner, | ) | No. 09 C 7778 |
| | ) | (04 CR 156) |
| v. | ) | |
| | ) | Judge John W. Darrah |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Petitioner Gustavo Campos's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. Campos brings this Petition on the ground that Campos's attorneys were ineffective. In support of his Motion, Campos asserts that his attorneys, Daniel Radakovich and Nishay Sanan, were ineffective because: (1) his lawyers failed to assert a statute of limitations defense; (2) his lawyers failed to raise an objection under the Speedy Trial Act; (3) his lawyer Nishay Sanan failed to submit a proposed jury instruction based on *Pinkerton v. United States*, 328 U.S. 640 (1946) (*Pinkerton*); and (4) his lawyers were ineffective for having failed to pursue plea negotiations with the Government.

## BACKGROUND

The facts underlying this case were set forth by the Seventh Circuit Court of Appeals in *United States v. Campos*, 541 F.3d 735 (7th Cir. 2008). Campos was convicted, in late 2005 after a lengthy jury trial, for his role as the leader of a large-scale cocaine distribution conspiracy. This conspiracy lasted from 2001 into the early part of

1

2004. The conspiracy had three phases. Phase one of the conspiracy began in December 2001 and lasted until March 1, 2002. During phase one, Campos ordered his co-conspirators to transport drugs in a semi-trailer from Texas to Chicago and to transport money in a semi-trailer back to Texas from Chicago. In February 2002, the DEA seized one of Campos's semi-trailers that was loaded with 250 kilograms of cocaine. Undeterred by the DEA's seizure, Campos began phase two of the conspiracy, which lasted from March 1, 2002 to June 10, 2003. Phase two of the conspiracy used rental cars to transport drugs from Texas to Chicago and to transport money from Chicago to Texas. On June 10, 2003, the DEA seized one of Campos' rental cars, which contained approximately $135,000 in cash. Still undeterred by yet another DEA seizure, Campos began phase three of the conspiracy, which lasted from July 2003 to February 10, 2004. Phase three of the conspiracy again used semi-tractor/trailers to transport drugs from Texas to Chicago and to transport money from Chicago to Texas. Campos utilized a warehouse located at 4800 S. Central Avenue, Chicago, Illinois, to unload the drugs from the semi-trailers. On February 10, 2004, the DEA searched the warehouse and seized 325 kilograms of cocaine and 3.7 kilograms of marijuana. Campos was arrested that night, and the operations of the conspiracy ceased.

Campos was sentenced to a term of life imprisonment for his role as the leader in the cocaine distribution conspiracy. On October 1, 2006, Campos, through his lawyer, Nishay Sanan, appealed his conviction and sentence. On September 3, 2008, the Court of Appeals for the Seventh Circuit affirmed the conviction and sentence. On December 1, 2008, a petition for writ of certiorari was filed; and on January 12, 2009, the writ of certiorari was denied. This timely filed 28 U.S.C. § 2255 Motion followed.

## LEGAL STANDARD

28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

25 U.S.C. § 2255.

This collateral relief is only available where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1992)). The district court must review the record and draw all reasonable inferences in favor of the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). A *pro se* petition is entitled to a liberal reading. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *habeas corpus* relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Additionally, a petitioner in a Section 2255 case is not entitled to an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).

## ANALYSIS

Claims of ineffective assistance of counsel are reviewed under the two-prong test delineated in *Strickland v. Washington*, 466 U.S. 668 (1984) (*Strickland*). Under this test, a defendant must show both: (1) that counsel's performance was deficient and

(2) that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 688, 694. The deficiency prong requires a defendant to demonstrate that the representation he received was objectively unreasonable, considering all of the circumstances. Counsel's conduct is presumed to satisfy professional standards. *Strickland*, 466 U.S. at 688-689. To demonstrate actual prejudice, a defendant must show that his counsel's performance was objectively unreasonable and that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 696.

Campos first argues that he received ineffective assistance from counsel because his attorneys failed to raise a statute of limitations argument pursuant to 18 U.S.C. § 3282(a).[1] Campos argues that law enforcement agencies began investigating Campos on or about October 17, 1998, and that Campos was indicted on March 11, 2004. Therefore, Campos argues, his attorneys should have raised a statute of limitations defense pursuant to 18 U.S.C. § 3282(a) because more than five years had passed since when law enforcement officials started investigating Campos and when Campos was indicted.

Campos's argument fails because Campos's counsels' performances were not deficient in regards to their failing to raise a statute of limitations defense. The indictment alleged that Campos engaged in an *ongoing* conspiracy that lasted up until February 10, 2004. Because the indictment was dated May 11, 2004, and the conspiracy lasted until February 10, 2004, an attempt by Campos's attorneys in raising this argument

---

[1] 18 U.S.C. § 3282(a) states:
> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282(a).

4

would have been frivolous. Accordingly, Campos's attorneys' failure to raise a statute of limitations defense pursuant to 18 U.S.C. § 3282(a) does not constitute ineffective assistance of counsel under *Strickland*.

Next, Campos argues that he received ineffective assistance from counsel because his attorneys failed to raise an objection for a violation of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(b).[2] Campos argues that he was arrested on February 10, 2004, and the Government filed the indictment against him on May 11, 2004, more than thirty days since his arrest. The Government responds to Campos's argument by citing the affidavit of Campos's attorney, Radakovich, that states that the Government moved for an extension of sixty days within which to seek an indictment and that the chief judge granted their motion.[3]

---

[2]18 U.S.C. 18 U.S.C. § 3161(b) states:
> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b).

[3]Radakovich's Affidavit was missing page two when it was initially filed with the Court by the Government. However, the Government re-filed its Response and included page 2 of Radakovich's Affidavit; a copy of which is attached to this Opinion.

Radakovich's Affidavit page 2 states:
> "Mr. Campos made his first appearance in court on or about February 11, 2004, in response to a Criminal Complaint following his arrest on a warrant issued by the Magistrate. Later the Government sought a sixty-day extension of time within which to seek the return of an indictment, and the Chief Judge of this district granted that request. Accordingly, the grand jury returned an indictment against Mr. Campos on May 11, 2004. Mr. Campos's case was eventually assigned to the Honorable John W. Darrah."

(Radakovich's Aff. pg 2).

5

Campos replies to the Government's argument by stating that no motion or order asking for or ordering an extension of time within which to bring the indictment appears on the docket sheet for *United States v. Campos*, 04 CR 156. An examination of the case file on the Northern District's CM/ECF LIVE Document Filing System supports Campos's argument. Therefore, a question of fact exists as to whether a motion for extension of time within which to bring the indictment was filed because Radakovich's Affidavit not supported by the record. However, as the Government argues, failure to move for an extension of time within which to bring the indictment would be harmless error and would not be grounds for relief pursuant to a 28 U.S.C. § 2255 motion because the Government could have brought another indictment against Campos. Accordingly, because Campos has failed to show that the proceedings would have been different had his attorneys raised a Speedy Trial Act violation, Campos's attorneys' failure to raise a Speedy Trial Act violation does not constitute ineffective assistance of counsel under *Strickland*.

Next, Campos argues that he received ineffective assistance from counsel because his attorney failed to move for a "limited co-conspirator liability instruction" pursuant to *Pinkerton*, 328 U.S. 640 (1946). Campos's argument is meritless because the jury was given a *Pinkerton* instruction.[4] Accordingly, Campos's claim does not constitute ineffective assistance of counsel under *Strickland*.

Finally, Campos argues that he received ineffective assistance from counsel because Campos's attorneys misadvised Campos about his plea options. Specifically,

---

[4] "We thus do not reach the argument that the convictions on the substantive counts should be reversed because the jury was given a *Pinkerton* instruction." *Campos*, 541 F.3d at 744-745.

6

Campos argues that his attorney, Radakovich, refused to enter into plea negotiations with the Government until Campos had paid the remainder of his attorney fees and that Attorney Sanan gave Campos the "overwhelming impression that he simply could not enter a guilty plea unless he provided substantial assistance [to the Government]." (Campos Memo. in Support p. 5). Further, Campos argues that he could not give substantial assistance to the Government because his family would be harmed if he did. Finally, Campos argues that he attempted to plead guilty to the charges but that this Court refused to allow him.

In regards to Campos's argument that his attorney, Radakovich, refused to enter into plea negotiations with the Government until Campos paid the remainder of Campos's attorney's fees, this fact is flatly contradicted by Radakovich's Affidavit, which states: "Mr. Campos states in his Affidavit . . . that 'Counsel refused to enter into plea negotiations with the Government until I had paid the necessary fees requested by him.' This is absolutely not true. I do not recall ever having any issues with Mr. Campos over fees."

In regards to Campos's argument that his attorney, Sanan, gave Campos the "overwhelming impression that he simply could not enter a guilty plea unless he provided substantial assistance [to the Government]" is also flatly contradicted by Sanan's Affidavit, which states: "I spoke with Mr. Campos about the options he had on many occasions, including the option of going to trial or pleading guilty with or without a plea agreement." Further, Campos's argument that he could not give assistance to the Government because his family was threatened with harm if Campos cooperated with the Government is meritless in that it is not a basis for relief pursuant to 28 U.S.C. § 2255.

7

Finally, in regards to Campos's argument that this Court refused to allow him to plead guilty, this argument is also factually inaccurate. On April 20, 2005, this Court did refuse to allow Campos to plead guilty to Count I. However, this Court's refusal was only until Campos had had time to consult with an attorney. Afterwards, Campos was free to plead guilty if he desired to do so. The transcript of this proceeding is as follows:

> THE COURT: You what?
>
> DEFEDNANT CAMPOS: I want to plead guilty to Count 1.
>
> THE COURT: Do you have any agreement with the government in that regard? Have you discussed this with your lawyer?
>
> DEFENDANT CAMPOS: I just want to plead out to Count 1, and whatever enhancements they have is I want them tried separately.
>
> THE COURT: Well, how many counts in the indictment are directed towards Gustavo Campos?
>
> MR. FULLERTON: I don't recall right now, Judge. Mr. Campos is named in multiple counts of the indictment.
>
> THE COURT: If you plead to one count, they can still go to trial on the remaining counts, Mr. Campos.
>
> DEFENDANT CAMPOS: That's fine. I want to plea out to Count 1.
>
> THE COURT: That's not a prudent thing to do. That would – that could possibly harm you. Have you discussed this with Mr. Radakovich?
>
> DEFENDANT CAMPOS: No.
>
> THE COURT: And have you made any attempts to retain a lawyer?
>
> DEFENDANT CAMPOS: Yes, I tried, but I –
>
> THE COURT: I'm going to appoint the – I'll appoint the federal defender, and will you convey that to them forthwith?
>
> MR. FULLERTON: Yes. I'll call them this morning.

THE COURT: Okay. And advise them that we've got a June 6th trial date.

You have a right, obviously, to plead not guilty as well as – a right to plead guilty as well as not guilty, but it's something that should be really thoughtfully done after considering all the consequences.

DEFENDANT CAMPOS: Yes. So can I plea out to Count 1?

THE COURT: I won't accept that today, no. I wouldn't accept it without first determining whether or not you've had the advice of counsel.

DEFENDANT CAMPOS: When am I getting my new counsel?

THE COURT: Well –

MR. FULLERTON: I'll call them this morning, Your Honor.

THE COURT: Okay.

MR. FULLERTON: I expect there should be a panel attorney on duty today.

THE COURT: Okay. Why don't we put it over to – put it over till tomorrow.

MR. FULLERTON: That's fine.

*Transcript of Proceedings before the Honorable John W. Darrah*, No 04 CR 156, April 20, 2005, pages 2-4.

Campos's attorneys did engage in plea negotiations on behalf of Campos. Campos's claims that his lawyers failed to inform him of his right to plead guilty and that he could cooperate with the Government are flatly contradicted by the affidavits of his lawyers and do not constitute ineffective assistance of counsel under *Strickland*. Further, Campos's claim that this Court refused to allow him to plead guilty is contrary to the record and without merit and therefore does not present a Constitutional violation.
9

## CONCLUSION

For all of the reasons stated above, Campos's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied.

Date: May 27, 2010

JOHN W. DARRAH
United States District Court Judge